Penny Kay Jansen n/k/a Penny Kay Berget, Petitioner-Appellant,
v.
Kyle Charles Jansen, Respondent-Respondent.
No. 04-0577.
Court of Appeals of Wisconsin.
Opinion Filed: October 7, 2004.
Before Dykman, Vergeront and Higginbotham, JJ.
¶1 PER CURIAM.
Penny Kay Berget appeals an order resolving a child support arrearage dispute. She claims that her ex-husband, Kyle Jansen, underpaid his child support obligation under the parties' divorce stipulation. We conclude that even if Jansen did, in fact, underpay support, Berget failed to meet her burden of proof as to the amount involved. We therefore affirm.
¶2 The child support stipulation provided:
The Respondent shall pay to the Petitioner child support for the two minor children, the amount of $250.00 per week. The child support amount above represents a deviation from the Child Support Guidelines, as found in the Wisconsin Administrative Code DWD 40. Under the application of the guidelines, the Respondent would be responsible for the payment of $301.27 per week based upon the Respondent's disclosed gross income of $5,221.93 per month. The parties acknowledge that the Respondent does work overtime, and that overtime will vary from week to week. The division of assets and debts herein, is unequal. Respondent is accepting sole responsibility for the payment of $1,166.00 monthly payment on a consolidated payment of several credit cards, a marital debt. The agreement to set child support in this matter at $250.00 per week is based upon the lack of sufficient income by the Respondent to pay the child support guidelines, and to pay the monthly payment as provided above. Further, the parties agree that at such time as the credit card debt, that the Respondent is paying to CCCS shall be paid in full, the Respondent shall at that time commence payment of child support that shall be 25% of his gross income, consistent with the child support guidelines.
¶3 For the first eight months after the divorce, Jansen made the monthly credit card payment of $1166. The next month he paid $2395. The month after that he paid $1406. In the next sixteen months, he paid the remainder of the credit card debt with fourteen monthly payments ranging between $682 and $784, one payment of $420, and a last payment of $310. He then began paying increased child support under the child support guidelines.
¶4 In the course of subsequent proceedings over physical placement and modification of child support, Berget claimed that Jansen violated the child support stipulation by paying less than $1166 per month towards the credit card debt for the last sixteen months of its life. She contended that, had he continued paying $1166 per month as stipulated, he would have paid off the debt much sooner, resulting in earlier commencement of increased support under the guidelines. As a remedy, she requested judgment for the difference between the child support actually paid, and the greater amount Jansen would have paid had he continued his $1166 monthly credit card payments.
¶5 After an evidentiary hearing, the trial court concluded that while the stipulation obligated Jansen to pay off the credit card debt, it did not require him to invariably pay $1166 per month.
¶6 During testimony prior to that ruling, Berget's counsel asked Jansen if he knew the amount of the credit card debt at the date of the divorce, and Jansen answered that he did not. The court later refused counsel's request for an order requiring Jansen to provide that information. Counsel conceded that without it, it was impossible to calculate the amount of the additional child support Berget claimed was due. The trial court's subsequent order denied Berget's claim to the additional child support, and ruled on other matters as well. This appeal concerns only Berget's child support claim.
¶7 We need not decide whether the stipulation required continued $1166 payments. Bergert concedes that "it is not possible to determine when the child support would have increased under the agreement" without knowing the amount of the credit card debt at the time of the divorce. It was her obligation to seek out that information, through discovery or otherwise, before coming to trial, and she made no showing that the information was unavailable through such means. Consequently, the trial court had no obligation at the evidentiary hearing, to suspend proceedings and order Jansen to produce that figure after he testified that he did not know what it was. It was Berget's claim and her burden of proof. "A party who carries a burden of proof cannot leave the family court in an evidentiary vacuum and then complain about the lack of evidence on appeal." Haeuser v. Haeuser, 200 Wis. 2d 750, 765, 548 N.W.2d 535 (Ct. App. 1996).
By the Court.  Order affirmed.